■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS CORDERO, Appellant.—Judgment, Supreme Court, New York County (Harold J. Rothwax, J.), rendered April 16, 1987, after jury trial, which convicted defendant of one count of criminal sale of a controlled substance in the third degree and sentenced defendant to an indeterminate term of imprisonment of 4½ to 9 years, reversed, on the law, and the case is remanded for a new trial.

Defendant was convicted of selling a $10 vial of crack to an undercover New York City police officer. At the inception of the trial, the prosecutor moved to close the courtroom to the public to protect the identity of the undercover police officer, who, the prosecutor represented, was involved in an ongoing undercover narcotics investigation. The prosecutor feared that since several drug parts were on the same floor of the courthouse, "I cannot be sure that a potential defendant or a defendant might walk into the courtroom", an admittedly "unlikely event." Defendant's attorney observed, most cogently, that the undercover officer had been waiting outside the courtroom in the public hallway, and that the courtroom was virtually empty.

The court observed that the courtroom, aside from counsel, the defendant, and a friend of the court, was empty. Although seeing no need for closure, and without examining the undercover officer, the court perfunctorily granted the motion, stating, "I feel obligated under pre-authority *[sic]* to close the courtroom during his testimony, but I will tell you that based on past experience it really is unnecessary since these cases attract no attention and we generally have nobody from the public here."

The pro forma closure of the courtroom was reversible error. The right to close the courtroom to the public must be "sparingly exercised and then, only when unusual circumstances necessitate it." *(People v Hinton,* 31 NY2d 71, 76.) As we observed in *People v Morales* (53 AD2d 517), "[n]o hearing

was held; no findings were made. The application was granted almost casually on little more than the bare application and a brief conclusory recital of necessity for the relief." While a full evidentiary hearing may not be required, "no closing can be tolerated that is not preceded by an inquiry careful enough to assure the court that the defendant's right to a public trial is not being sacrificed for less than compelling reasons" *(People v Jones,* 47 NY2d 409, 414-415). And while inquiry of the witness may not be necessary in every case, such an inquiry is necessary if the motion is to be granted where the People's representations, even if true, are clearly insufficient. As the court observed in *People v Cuevas* (50 NY2d 1022, 1024), "Here the District Attorney sought to have the courtroom closed solely on his representation that the witness was an undercover officer. Although the court questioned the prosecutor prior to granting the motion, it erred by failing to make an adequate inquiry of the witness, as well as the factual findings prescribed in *People v Jones (supra)."*

There was no showing that absent closing the courtroom, there was a serious possibility that any pending investigation or the officer's safety would be jeopardized. The comments of both the prosecutor and the court make this clear. Indeed, the undercover officer was waiting outside of the courtroom in a common area, where he might have been seen by the very "potential defendants" whose possible presence in the courtroom was held to justify a curtailment of defendant's right to a public trial. As the Court of Appeals has observed, "However, we never suggested, absent real jeopardy, such an agent's appearance on the stand, without more, would sanction an exclusion order." *(People v Jones,* 47 NY2d 409, 414, supra.)* Nor do we think that the defendant had any burden to request that the witness be questioned when the court immediately granted the application despite its own conclusion that closure of the courtroom was unnecessary.

We note that in cases of this kind, a per se rule of reversal irrespective of prejudice applies. *(People v Jones, supra,* at 417.) Concur—Carro, Rosenberger and Smith, JJ.

Sullivan, J. P., and Milonas, J., dissent in a memorandum by Milonas, J., as follows: In *People v Stanton* (108 AD2d 688, 689), this court, citing *People v Jones* (47 NY2d 409), recognized the well-established principle that "trials may be closed during the testimony of undercover agents whose public appearance would endanger their lives or seriously damage other investigations". In that regard, it was noted that the Court of Appeals has held that a determination to exclude the

public from the courtroom while the undercover officer is on the stand may only be made after "an inquiry careful enough to assure the court that the defendant's right to a public trial is not being sacrificed for less than compelling reasons" *(People v Jones, supra,* at 414-415). The judgment of conviction in *People v Stanton (supra)* was reversed because the court therein had closed the trial over defendant's objection following a private conversation with the District Attorney, the contents of which were not disclosed on the record; nor did the court set forth the reasons for its decision.

Thus, unlike the instant situation, there was no indication in *People v Stanton (supra)* that the undercover agent was still actively engaged in a narcotics investigation or that he would be in any manner imperiled as a result of his testifying in open court. In contrast, the prosecutor here represented to the court that the officer in question was involved in a continuing investigation on the lower east side concerning a class A-I felony purchase of drugs. It was, therefore, essential that the officer, who had already engaged in one or two drug buys, be protected as much as possible. Moreover, while the undercover officer may have been waiting in a common area, he was not recognizable as such or in any way distinguishable from any other person present in the corridor. It is also significant that the defense's objection to closing the courtroom was merely a perfunctory one. Indeed, defendant's counsel neither requested that the informant be produced at a hearing so that he could be interrogated regarding the People's claim as to his current status nor did it otherwise challenge the truthfulness of the District Attorney's statement. Clearly, the defense, having failed to insist upon its rights at the trial level, is now searching for an issue to obtain a reversal on appeal. In granting the prosecution's application to exclude the public during the undercover's testimony, the court did not, in sharp distinction to what occurred in *People v Stanton (supra),* rely upon a private conversation with the District Attorney. Certainly, the active participation of an undercover agent in an ongoing investigation is a valid reason for temporarily closing the trial *(see, People v Glover,* 57 NY2d 61), and the Court of Appeals has declared that "a trial court would not appear to be without discretion to choose among alternative means for determining whether an application to close a courtroom is meritorious" *(People v Jones, supra,* at 414), thereby specifically rejecting the requirement that an evidentiary hearing be conducted whenever there is a motion by the People to exclude the public.

In my opinion, the trial court was not unwarranted in finding that it was appropriate to close the courtroom under the circumstances prevailing herein and, accordingly, the judgment of conviction should be affirmed.